**Maurice D. ROSS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 133, 2006.

Supreme Court of Delaware.

Submitted: Feb. 14, 2007.

Decided: May 9, 2007.

---

Robert M. Goff, Office of the Public Defender, Wilmington, DE, for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice, for the majority:

This is an appeal from final judgments that were entered in a criminal proceeding, following a bench trial in the Superior Court. The defendant-appellant, Maurice D. Ross, was convicted of Trafficking Cocaine, Possession of Cocaine with Intent to Deliver and several other related drug felonies. Ross was sentenced to the minimum mandatory term of incarceration for two years, followed by probation.

In this direct appeal, the sole issue raised by Ross relates to the Superior Court's decision to deny his motion to suppress evidence. Ross argues that his rights under Article I § 6 of the Delaware Constitution were violated because "an anonymous tip provided to police officers that a male wearing gray pants was dealing drugs at a specific location did not create a reasonable articulable suspicion to justify his detention and that he was stopped when officers approached him and repeatedly asked for an interview even after they were ignored." In response, the State argues the trial judge applied proper legal principles to the facts of this case in denying Ross' motion to suppress the drug evidence recovered by the police. According to the State, although the tip

received by the police was anonymous, the police corroborated it before seizing Ross and discovering the drugs.

We have concluded that the seizure of Ross did not violate Article I § 6 of the Delaware Constitution. Therefore, the motion to suppress the drug evidence was properly denied. Accordingly, the judgments of the Superior Court are affirmed.

### Facts

On January 28, 2004, Wilmington Police Officer Heather Brown received a 911 dispatch report from an anonymous source that a male wearing gray pants was dealing drugs on the 2900 block of Washington Street. The report did not mention the male's race or size.[1] After receiving that information, Officer Brown and her partner, Officer Chris Villaverde, drove down Washington Street and crossed 29th Street in their marked car.

Both police officers saw several black males on the east side of the 2900 block. Most of the men were wearing black pants and black t-shirts. Only one of these men, Ross, was wearing gray pants. The police officers slowed their car and rode along beside Ross. As they slowed, Ross turned and walked south, away from the officers, at an unhurried pace. Ross seemed to notice them and stopped to look at them.

The officers then stopped their car and got out. Ross appeared to be nervous. Upon exiting the patrol car, Officer Villaverde immediately began requesting an interview, asking repeatedly, "Can we talk to you?" Ross, however, continued to head south as the police followed, all the while asking Ross to speak with them.[2]

Ross approached an older man and began speaking to the man in a low voice.[3] Ross then reached out to the man with a cupped hand. As he was doing so, the older man backed away and shook his head. Although Officer Brown could not see what was in Ross's hand, she suspected that he was trying to pass off illegal drugs. Brown said "stop" and grabbed Ross' right hand or arm. The officers then subdued Ross and found cocaine on the ground near Ross' hand.

### Constitutional Seizure Protections

In this appeal, Ross asserts that the trial judge erred in ruling that Ross was not "seized" until Officer Brown said stop and simultaneously grabbed his right hand. To support that argument, Ross cites *Jones v. State* for the proposition that a seizure has taken place, pursuant to Article I § 6 of the Delaware Constitution, when "a reasonable person would have believed that he is not free to ignore the police presence."[4] Ross contends that a seizure occurred when the police officers exited the vehicle and started following him while asking to speak with him, because at that time, a reasonable person would have believed that he was not free to ignore the police presence.

This Court has previously addressed the protections against unreasonable searches and seizures that are afforded by both the Delaware Constitution and the Fourth Amendment of the United States Constitution. We recently reviewed and contrasted those protections in *Flonnory v. State:*

---

1. Although Officer Brown testified that the anonymous tip referred to a black male, her notes did not reflect this.

2. Brown testified that Villaverde was repeating his request "the whole time."

3. The officers testified that they could not discern what Ross was saying to the older man.

4. *Jones v. State,* 745 A.2d 856, 869 (Del.1999).

The right of individuals to be free from unlawful searches and seizures is secured in Delaware by both the guarantee of an individual's right under the Fourth Amendment to the United States Constitution to be "secure in their persons, house, papers, and effects, against unreasonable searches and seizures" and the nearly identical language of Article I, Section 6 of the Delaware Constitution. We have held that the Delaware Constitution provides a greater protection for the individual than the United States Constitution in the determination of whether a seizure by the State has occurred. In *Terry,* the United States Supreme Court held that a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty" of an individual. That Court clarified this standard in *Michigan v. Chesternut* when it declared that a seizure occurs whenever the conduct of a police officer would "communicate to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Although the United States Supreme Court carved a significant exception to *Chesternut* in *California v. Hodari D.,*[5] we determined in *Jones v. State* that Article I, Section 6 of

Delaware Constitution offered greater protection than the Fourth Amendment, requiring the Delaware courts to continue to apply a standard similar to that set forth in *Chesternut.*[6]

In *Michigan v. Chesternut,*[7] the United States Supreme Court elaborated upon the "reasonable person" standard that was first adopted in *Terry v. Ohio*[8]:

While the test is flexible enough to be applied to the whole range of police conduct in an equally broad range of settings, it calls for consistent application from one police encounter to the next, regardless of the particular individual's response to the actions of the police. The test's objective standard-looking to the reasonable man's interpretation of the conduct in question-allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment. This "reasonable person" standard also ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached.[9]

Both Ross and the State agree that the issue raised in this appeal are controlled by this Court's interpretation of Delaware Constitution Article I, § 6 in *Jones v. State.*[10]

---

**5.** *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690. In *Hodari D.,* the Supreme Court held that a show of authority by itself, even where a reasonable person would believe that he or she was not free to leave, does not give rise to a seizure of a person within the meaning of the Fourth Amendment. Although the police officers in that case lacked the requisite reasonable suspicion to detain the suspect in that case, even after Hodari D. fled at the officers' approach, the Court found that the resulting pursuit was not sufficient to communicate to the suspected individuals that they were not free to leave. The police did not seize the individuals for Fourth Amendment purposes until the officers used *physical restraint.* Thus, evidence discarded during the chase was not discovered

as the result of an illegal search and the trial judge properly admitted it.

**6.** *Flonnory v. State,* 805 A.2d 854, 857 (2001) (footnotes omitted).

**7.** *Michigan v. Chesternut,* 486 U.S. 567, 574, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

**8.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**9.** *Michigan v. Chesternut,* 486 U.S. at 574, 108 S.Ct. 1975 (1988) (internal citations omitted).

**10.** *Jones v. State,* 745 A.2d 856, 869 (Del. 1999).

### Jones v. State

In *Jones v. State*, an anonymous caller reported a man in a blue coat to be engaging in suspicious activity in a known high crime area. The police pulled up in a marked vehicle, and without further investigation, ordered Jones to stop and remove his hands from his pockets. This order was repeated three times without effect. Jones was eventually physically restrained. The officers involved, testified that they were attempting to effectuate a pedestrian stop and that they did not feel that Jones was free to leave. Under the facts in *Jones*, this Court held that the police did not have a reasonable and articulable basis to suspect criminal activity that justified the seizure.

### Jones Distinguished

In this case, an anonymous caller reported a man in gray pants dealing drugs in an area that was not known as a high crime area. The police exited their vehicle and requested to speak with Ross. There was no testimony that the police were attempting a pedestrian stop, or that Ross was not free to leave. While walking away from the police, Ross approached an older gentleman, spoke to him and reached out toward him with a cupped hand. The gentleman shook his head and backed away, as Ross continued to push his hand towards him. The officers testified that they were aware that people often cup their hands in the same manner when trying to hide the passing of illegal drugs. It was at this point that the police grabbed Ross by the arm and ordered him to stop.

■ Ross correctly asserts that the standard to determine a seizure, as set forth in *Jones*, is when "a reasonable person would have believed that he is not free to ignore the police presence." [11] In *Jones*, however, this Court followed the above definition with the ruling that, "under that analysis, Jones was seized within the meaning of Section 1902 and Article I, § 6 when Patrolman Echevarria first ordered him to stop and remove his hands from his pockets." [12] Similarly, in this case, the trial judge ruled that a seizure had occurred when Officer Brown ordered Ross to stop and physically restrained him.[13]

*Jones* is distinguishable from this case in that Officers Brown and Villaverde initially approached Ross and merely asked to speak with him as he was walking away. As the United States Supreme Court noted in *Terry v. Ohio*:

> Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.[14]

More recently, in *Muehler v. Mena*, the United States Supreme Court stated:

> We have held repeatedly that mere police questioning does not constitute a seizure. Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual.[15]

---

11. *Jones v. State*, 745 A.2d 856, 869 (Del. 1999).

12. *Id.*

13. The trial court does not differentiate between these two actions, as they occurred almost simultaneously, nor does it elaborate on which of the two, if any, would have

constituted a seizure independent of the other.

14. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

15. *Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) (internal citations and quotations omitted).

### Ross Seized Lawfully

■ We hold that the presence of uniformed police officers following a walking pedestrian and requesting to speak with him, without doing anything more, does not constitute a seizure under Article I, § 6 of the Delaware Constitution.[16] The Superior Court properly concluded that Ross was not seized until he was ordered to stop and restrained by the police. When the police exercised that show of verbal authority and physical force, they had a reasonable articulable suspicion of criminal activity based upon the furtive cupped hand movements by Ross, which corroborated the veracity of the anonymous tip. Accordingly, the drug evidence the police discovered after lawfully seizing Ross was properly admitted into evidence against him.

### Conclusion

The judgments of the Superior Court are affirmed.

STEELE, Chief Justice, dissenting.

I agree with the majority that, by the time Ross extended a cupped hand toward a reticent older man in an apparent attempt to pass off the drugs, the police had a reasonable articulable suspicion to seize Ross. I disagree with the majority, however, with regard to when the seizure occurred. Because I believe that the seizure occurred before Ross approached the older man, I do not believe that the police had a reasonable articulable suspicion to seize Ross based on the anonymous tip and their

observations. Therefore, I believe the Superior Court judge should have granted Ross's motion to suppress the evidence derived from the seizure and would reverse Ross's conviction.

Following the United State Supreme Court's holding in *Michigan v. Chesternut*,[17] we held, in *Jones v. State*,[18] that a seizure takes place when "a reasonable person would have believed that he or she is not free to ignore the police presence." [19]

Relying on *Jones*, Ross claims that no reasonable person would have believed that he was free to ignore the police presence under the circumstances. He submits that a reasonable person in his position would have known that the police officers' repeated requests for an interview would end only when he stopped and submitted.[20] Even though Officers Brown and Villaverde never used the command "stop" (until they grabbed him), nor testified, as the majority deems important, that they "were attempting a pedestrian stop," as they did in *Jones*, Ross claims that the police clearly intended to stop him from the beginning and that their intent became clearer each time Villaverde made the request and Ross ignored him during the police's slow pursuit.

The rationale of *Jones* applies here: by the officers' continued questioning and slow pursuit, any reasonable person would have believed that the police had communicated that Ross was not free to walk away. Indeed, the police did not let Ross ignore them. Officers Brown and Villaverde did

---

16. Accord *Jones v. State*, 745 A.2d 856, 869 (Del.1999).

17. 486 U.S. at 574, 108 S.Ct. 1975 (1988) (holding that a seizure occurs whenever the conduct of a police office would "communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.").

18. 745 A.2d 856 (Del.1999).

19. *Jones*, 745 A.2d at 868.

20. Brown testified that Villaverde repeated the request for an interview "the whole time."

not "merely ask[ ] to speak with [Ross] as he was walking away," as the majority suggests. Instead, the officers made eye contact with Ross and followed him a short distance in their marked police car, then, dressed in their uniforms and carrying batons, left their car and followed Ross on foot in slow pursuit, closing the distance between Ross and themselves, all the while "requesting" that he submit to an interview. I cannot imagine a reasonable person believing, under those circumstances, that he or she was free to continue ignoring the police. I read *Jones* to require a focus on what a reasonable person would believe the police intent to be, not what the police testify it to be in a later hearing. Thus, I believe that the police seized Ross before Ross approached the older man. Because there was no reasonable articulable suspicion to support the seizure before Ross approached the older man, I respectfully dissent.