# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL CARELLO | § | |
| | § | No. 301, 2016 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1511011583 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: January 25, 2017
Decided: February 8, 2017

Before **HOLLAND**, **VAUGHN**, and **SEITZ**, Justices.

## <u>ORDER</u>

This 8th day of February, 2017, having considered the briefs and the record below, it appears to the Court that:

(1)    Delaware State Police officers stopped Frank Prentice for failing to signal while making a left turn. When they approached Prentice's car, they saw two hypodermic needles in the driver's side door. Police arrested him and the passenger, Thomas McIlvane, for possession of drug paraphernalia. McIlvane told the police officers that he was on probation, and that he was staying at the Motel 6 in Newark. Because McIlvane was on probation, police decided to do an administrative search of his hotel room. When Detective Mark Hogate of the

Delaware State Police arrived at the hotel to search the room, he discovered that the room was rented to Michael Carello, and decided to notify him of the search.

(2) Carello was standing by a car near the room, loading his trunk. As the officer approached Carello, he started reaching behind the small of his back, backed up behind the car, threw a gun in the trunk, and took off running. Detective Hogate arrested him, and saw the gun in plain view in his trunk. He also searched the car and found two digital scales in the center console, and marijuana in the floorboard of the front passenger seat. Police then searched the hotel room and found a gun in a cardboard box between the two beds.

(3) Carello moved to suppress all the evidence found as a result of the search. The Superior Court granted the motion as to all of the evidence except the gun found in the open trunk of the car. The Superior Court ruled that the gun in the trunk would not be suppressed because the officers were simply attempting to notify Carello that they were going to search his room. Thus, the encounter in the parking lot was consensual, and not a seizure under the Fourth Amendment. Carello was subsequently convicted of various weapons offenses in a stipulated bench trial.

(4) On appeal, Carello argues that the Superior Court abused its discretion by refusing to suppress the gun found in the trunk, arguing that its discovery resulted from an unconstitutional seizure. The Superior Court correctly held that

the encounter in the parking lot—though escalated by Carello—did not amount to a seizure for Fourth Amendment purposes. Therefore, we affirm the judgment of the Superior Court.

(5) On November 18, 2015, Detective Hogate and several other Delaware State Police officer members of the Governor's Task Force were conducting surveillance of a Motel 6 in Newark. Around 9:00 PM, they saw Prentice make a left turn out of the hotel parking lot without using his signal, and stopped his car. When one of the officers approached the car, he saw two hypodermic needles in plain view in the driver's side door. They arrested Prentice and the passenger, McIlvane. McIlvane was on probation at the time.

(6) McIlvane told the officers that he was staying in a room in the Motel 6 in Newark. When police searched him, they found a key card to the room. The officers then decided to do an administrative search of the hotel room. But when the officers went to the hotel, they found that the room was rented in Michael Carello's name.

(7) Detective Hogate saw Carello in the hotel parking lot, loading the trunk of his car. He approached Carello to notify him that the officers were going to perform an administrative search of his hotel room. He did not suspect Carello had committed any crimes. Detective Hogate called out to Carello and said, "Hey,

Michael, I need to talk to you."[1]  Carello looked at Detective Hogate and reached behind the small of his back with his left hand.  The detective said "don't do that," and pointed his gun at Carello.  Carello continued staring at the detective and walked back towards the open trunk of the vehicle.  The detective saw him toss something in the trunk of his car, and heard a "metallic thud."  Carello then ran away.  Detective Hogate chased after Carello and used his taser to stop him.  He then arrested Carello.

(8)    Detective Hogate saw a gun in the open trunk of the car.  Police then conducted an inventory search of the car because "there was no one operating the vehicle on private property."[2]  They found two digital scales in the center console of the car and two grams of marijuana under the front passenger floorboard.  The police also searched the hotel room and found another gun in a cardboard box between the two hotel beds.

(9)    A grand jury indicted Carello on charges of carrying a concealed deadly weapon, two counts of possession of a firearm by a person prohibited, possession of ammunition by a person prohibited, possession of marijuana, and resisting arrest.  Carello moved to suppress all the evidence obtained as a result of the search.  The court held that the search of the hotel room and the interior of the car violated Carello's constitutional right to be free from unreasonable searches

---

[1] App. to Opening Br. at 118.
[2] *Id*. at 116.

and seizures, and suppressed the evidence police obtained from those searches. As to the hotel room, the court held that Carello's constitutional rights took precedence over the officers' desire to conduct an administrative search of the probationer's hotel room. Thus, the officers needed to obtain a search warrant. Further, the State stipulated that the marijuana police found in Carello's car was not seized as the result of a proper inventory search. But, the Superior Court refused to suppress the gun in the car trunk, reasoning that Carello was not "seized" when the officer asked to talk to him. Rather, the court held that Carello escalated the situation through his own action.

(10) On May 17, 2016, the Superior Court held a stipulated bench trial. Evidence and testimony from the suppression hearing was incorporated by reference into the bench trial. The Superior Court found Carello guilty of one count of possession of a firearm by a person prohibited, possession of ammunition by a person prohibited, carrying a concealed deadly weapon, and resisting arrest. The court granted Carello's request for immediate sentencing. The State moved to declare Carello an habitual offender, which the court granted. He was sentenced to a total of twenty-three years at Level V incarceration, followed by probation. Carello appealed.

(11) On appeal, Carello claims that the Superior Court abused its discretion when it declined to suppress the gun police found in his trunk, arguing that it

resulted from an unconstitutional seizure. Specifically, he argues: (1) he was seized when the detective attempted to notify him of his intent to search his hotel room; (2) police lacked reasonable suspicion to seize him; and (3) the gun should have been suppressed because it resulted from an illegal seizure. We review the Superior Court's denial of a motion to suppress after an evidentiary hearing for abuse of discretion.[3] "To the extent that we examine the trial judge's legal conclusions, we review the trial judge's determinations *de novo* for errors in formulating or applying legal precepts. To the extent the trial judge's decision is based on factual findings, we review for whether the trial judge abused his or her discretion in determining whether there was sufficient evidence to support the findings and whether those findings were clearly erroneous."[4]

(12) The Fourth Amendment to the United States Constitution and Article I, § 6 of the Delaware Constitution prohibit unreasonable searches and seizures by the government.[5] The United States Supreme Court and this Court "have repeatedly held that not every encounter with the police is a seizure under the Fourth Amendment."[6] For example, "mere police questioning does not constitute a seizure. Even when officers have no basis for suspecting a particular individual,

---

[3] *Culver v. State*, 956 A.2d 5, 10 (Del. 2008).
[4] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1284-85 (Del. 2008).
[5] *Harris v. State*, 806 A.2d 119, 124 (Del. 2002).
[6] *Williams v. State*, 962 A.2d 210, 214 (Del. 2008).

6

they may generally ask questions of that individual."[7] "During a consensual encounter, a person has no obligation to answer the officer's inquiry and is free to go about his business. Only when the totality of the circumstances demonstrates that the police officer's actions would cause a reasonable person to believe he was not free to ignore the police presence does a consensual encounter become a seizure."[8] In conducting this analysis, we focus on the police officer's actions to determine objectively whether a person would feel he or she was not free to terminate the encounter.[9]

(13) In *Jones v. State*, this Court adopted a six-factor test to determine whether a person has been seized under Delaware law:

> (1) whether the encounter occurred in a public or private place; (2) whether the suspect was informed that he was not under arrest and free to leave; (3) whether the suspect consented or refused to talk to the investigating officers; (4) whether the investigating officers removed the suspect to another area; (5) whether there was physical touching, display of weapons, or other threatening conduct; and (6) whether the suspect eventually departed the area without hindrance.[10]

The *Jones* Court explained that the test is based on the totality of the circumstances, and that "no one factor is legally determinative, dispositive, or paramount."[11]

---

[7] *Id.* at 215 (quoting *Muehler v. Mena*, 544 U.S. 93, 101 (2005)).

[8] *Williams*, 962 A.2d at 215-16.

[9] *Jones v. State*, 745 A.2d 856, 869 (Del. 1999).

[10] *Jones v. State*, 28 A.3d 1046, 1052-53 (Del. 2011) (quoting *United States v. Scheets*, 188 F.3d 829, 836-37 (7th Cir. 1999)).

[11] *Jones*, 28 A.3d at 1053 (internal citations omitted).

(14) The question before us is whether Detective Hogate's statement to Carello that he needed to talk to him would cause a reasonable person to believe he was not free to leave. The Superior Court ruled that the detective approached Carello only to inform him that he was going to do an administrative search of his hotel room. Because Carello was not seized by the detective, and the police did not provoke him to abandon the gun, the court found that the encounter was consensual. The Superior Court's finding is well supported by the record. This is the type of "mere police questioning" that this Court has consistently found to pass constitutional muster.[12]

(15) Further, applying the *Jones* factors to the facts of this appeal, we find that all of the factors weigh in favor of the Superior Court's finding that Carello was not seized. First, the encounter occurred in a public parking lot. Second, the detective did not tell Carello he was under arrest or not free to leave. Third, Carello neither consented nor refused to speak. Instead, he hid from the officer and ran away. Fourth, the officers did not remove Carello from the area.[13] Fifth, Detective Hogate did not initially show a weapon until Carello reached behind his

---

[12] *See Brown v. State*, 35 A.3d 418, 2011 WL 5319900, at *1 (Del. 2011) (Table) (officers pulled up to defendant and asked his name and if they could talk to him); *Williams*, 962 A.2d at 213 (officer asked defendant's name, birth date, and if he needed a ride); *Ross v. State*, 925 A.2d 489, 494 (Del. 2007) ("We hold that the presence of uniformed police officers following a walking pedestrian and requesting to speak with him, without doing anything more, does not constitute a seizure under Article I, § 6 of the Delaware Constitution.").

[13] The fact that Carello was taken away after he was arrested for being in possession of the gun is not relevant to our determination of whether the initial encounter was consensual.

back and hid behind the car. Finally, although Carello did not leave the area without a hindrance, it is because he escalated the situation. As the Superior Court held, Carello's "actions raised the stakes considerably. By placing his hand behind his back in a manner common to, at least in an area where people are known to carry weapons, and then backing himself around into a position where he would have cover, [he] . . . changed . . . the situation dramatically."[14]

(16) Detective Hogate did no more than attempt to notify Carello that he was going to search his hotel room—the kind of consensual police encounter permitted by the constitution. Therefore, the Superior Court did not abuse its discretion by declining to suppress the gun. Because we have determined that police did not seize Carello, we do not reach his remaining contentions.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[14] Opening Br. Ex. B. at 29-30.

9