## IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TARIQ LOAT, | § | |
| | § | No. 254, 2016 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1511011409 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: February 8, 2017
Decided: February 22, 2017

Before **HOLLAND**, **VAUGHN** and **SEITZ**, Justices.

## <u>ORDER</u>

This 22nd day of February, 2017, having considered the briefs and the record below, it appears to the Court that:

(1) On November 18, 2015, Detectives Alexis Schupp and Jose Cintron of the Wilmington Police Department were on patrol near the 500 block of Maryland Avenue in Wilmington when they saw Tariq Loat and Vaughn Rowe walking down the street. As Rowe was walking, he kept reaching for his waistband, leading the detectives to suspect he was carrying a gun. Because the detectives were in plain clothes and an unmarked vehicle, they called for uniformed officers to assist them in approaching the men. Uniformed officers

pulled up to Loat and Rowe and asked to speak to them. Loat immediately took off running. Rowe also attempted to flee, but an officer detained him. Police later found a gun in his waistband. Another officer chased after Loat, and ordered him to stop. The police eventually detained Loat, and found a gun ten feet away from where they found him.

(2) Rowe moved to suppress the evidence arguing that police did not have reasonable suspicion to stop him. Loat later joined in that motion. After a hearing, the Superior Court denied the motion. The court determined that the officers had seized Loat and Rowe when they initially asked to speak with them. Further, as to Loat, the court found that because the defendants were in a high crime area, and because Detective Schupp knew that Loat had access to firearms because he had executed a "recent search warrant" at Loat's home that yielded weapons, there was reasonable suspicion to stop him. Further, the court held that when Loat ran away, "there was reasonable articulable suspicion that [Loat] was armed and [the] chase was appropriate and lawful."[1] Thus, the Superior Court declined to suppress the evidence. The court later found Loat guilty of various weapons offenses after a stipulated bench trial.

(3) On appeal, Loat raises two issues. First, he claims that the trial court's determination that Detective Schupp had "recently" executed a search

---

[1] App. to Opening Br. at 35.

warrant at Loat's residence was clearly erroneous. Second, Loat claims that the court erred when it held that the police had reasonable suspicion to stop him. For the reasons discussed below, we affirm the judgment of the Superior Court.

(4) On November 18, 2015, Detectives Schupp and Cintron of the Wilmington Police Department were on patrol near the 500 block of Maryland Avenue in Wilmington. The detectives were in plain clothes driving an unmarked police car. While at a stop light, the detectives saw Loat and Rowe walking down Maryland Avenue. Detective Schupp remembered Loat because he had previously executed a search warrant at his house and seized illegal guns from his family members. Loat was not the subject of the warrant.

(5) Detective Schupp noticed that Rowe's hand was "plastered" against his side as if he was holding something in his waistband. Rowe occasionally removed his hand from his waistband, but repeatedly returned it as if he were conducting a "security check" of the item he had hidden there. The detectives suspected that Rowe was carrying a gun. After watching Rowe and Loat for six to seven minutes, they decided to question them. Because the detectives were in plain clothes, they called for uniformed officers to approach the men.

(6) Corporals Daniel Moore and Gaetan MacNamara of the Wilmington Police Department responded to the call. Corporal Moore stepped out of the

3

vehicle and asked Rowe and Loat, "Hey, can I talk to you?"[2]  Loat immediately ran

away.  Rowe attempted to run away, but Corporal Moore grabbed him and

restrained him on the sidewalk.  At that point, Corporal Deanne Warner arrived

and took custody of Rowe.  She found a gun in Rowe's waistband.

(7)    Corporal MacNamara chased Loat.  Loat grabbed his waistband, and

Corporal MacNamara yelled "stop, police!"  He believed Loat was attempting to

grab a gun.[3]  Another officer eventually caught Loat.  When Corporal MacNamara

caught up to them, he saw a gun on the ground about ten feet from Loat.

(8)    Police arrested Loat and Rowe and charged them with possession of a

firearm by a person prohibited, possession of ammunition by a person prohibited,

and carrying a concealed deadly weapon.  Loat was also charged with resisting

arrest, and Rowe was charged with possession of a controlled substance.[4]  On

February 26, 2016, Rowe moved to suppress the evidence, arguing that police

obtained it as a result of an unconstitutional seizure.  On March 31, 2016, Loat's

counsel moved to join Rowe's motion to suppress.  The Superior Court held a

hearing on the motion on April 15, 2016.

(9)    At the hearing, Detective Schupp testified that he knew Loat had

access to guns because he had previously executed a search warrant at Loat's

---

[2] App. to Opening Br. at 18.
[3] *Id*. at 24.
[4] The State entered a *nolle prosequi* on the possession of a controlled substance charge before trial.

4

house. He also testified that criminals typically pass weapons back and forth to elude police efforts to locate firearms. Thus, based on Rowe's behavior and Detective Schupp's training and past experience, he believed that Rowe was carrying a gun.

(10) After the hearing, the Superior Court denied the motion, finding that the police had reasonable suspicion to stop Loat and Rowe. The court determined that the seizure occurred when police approached the men and asked to talk to them. As to Loat, the court held that because the defendants were in a high crime area, and because Detective Schupp knew that Loat had access to firearms because he had executed a "recent search warrant" at Loat's home that yielded weapons, there was reasonable suspicion to stop him.[5] Further, the court held that when Loat fled after the officers approached him, "there was reasonable articulable suspicion that [Loat] was armed and [the] chase was appropriate and lawful."[6] Further, "[t]he gun was not seized from [Loat's] person. It was recovered after officers observed [Loat] throwing an object, therefore, as long as the chase was lawful, then the gun should not be suppressed."[7]

(11) On April 26, 2016, after a stipulated bench trial, the Superior Court found Loat guilty of all charges. On April 29, 2016, the Superior Court sentenced

---

[5] App. to Opening Br. at 34.
[6] *Id*. at 35.
[7] *Id*.

5

Loat to nineteen years and ninety days at Level V incarceration, suspended after one year for decreasing levels of supervision. This appeal followed.

(12) Loat first claims that the trial court clearly erred by finding that the search of Loat's house was "recent." But Loat has failed to explain how the timing of the search affects the reasonable suspicion analysis. Thus, even if the Superior Court erred by calling the search recent, it does not constitute reversible error.

(13) Second, Loat claims that the officers lacked reasonable suspicion to stop him. We review the denial of a motion to suppress after an evidentiary hearing for abuse of discretion.[8] "Whereas here, we are reviewing the denial of [a] motion to suppress evidence based on an allegedly illegal stop and seizure, we conduct a *de novo* review to determine whether the totality of the circumstances, in light of the trial judge's factual findings, support a reasonable and articulable suspicion for the stop."[9]

(14) The Fourth Amendment to the United States Constitution and Article 1, § 6 of the Delaware Constitution prohibit unreasonable searches and seizures.[10] Evidence obtained as a result of an unreasonable search or seizure must be excluded from use at trial.[11] In certain circumstances, law enforcement officers may stop or detain an individual for a limited investigation if the officer believes

---

[8] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1284 (Del. 2008).
[9] *Id*. at 1285.
[10] *Harris v. State*, 806 A.2d 119, 124 (Del. 2002).
[11] *Hanna v. State*, 591 A.2d 158, 162 (Del. 1991).

6

that the individual "is committing, has committed, or is about to commit a crime."[12]

(15)  The United States Supreme Court and this Court "have repeatedly held that not every encounter with the police is a seizure under the Fourth Amendment."[13] Further, "mere police questioning does not constitute a seizure. Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual."[14] A person is seized only if, under the totality of the circumstances, a reasonable person in the same position would not feel free to "go about his business" or "ignore the police presence."[15] We focus on the officer's objective actions in this analysis.[16]

(16)  We have consistently held that "mere police questioning" does not constitute a seizure.  For example, in *Ross v. State* we held that "the presence of uniformed police officers following a walking pedestrian and requesting to speak with him, without doing anything more, does not constitute a seizure under Article I, § 6 of the Delaware Constitution."[17] Further, in *Brown v. State*, we held that the defendant was not seized when an officer asked the defendant's name and whether

[12]*Woody v. State*, 765 A.2d 1257, 1262 (Del. 2001).
[13] *Williams v. State*, 962 A.2d 210, 214 (Del. 1999).
[14] *Id*. at 215 (quoting *Muehler v. Mena*, 544 U.S. 93, 101 (2005)).
[15] *Flonnory v. State*, 805 A.2d 854, 857 (Del. 2001).
[16] *Jones v. State*, 745 A.2d 856, 869 (Del. 1999).
[17] 925 A.2d 489, 494 (Del. 2007).

he could speak to him,[18] and recently, in *Carello v. State*, we held that the defendant was not seized when an officer said he "needed to talk to" the defendant.[19]

(17) Here, Corporal Moore did no more than ask to speak with Loat and Rowe, which we have consistently held to be a consensual encounter. Thus, Loat was not seized and police did not need reasonable suspicion to initially approach him. Although the Superior Court incorrectly determined when the seizure occurred, it correctly held that the officers had reasonable suspicion to stop Loat after he ran away.

(18) Reasonable suspicion exists when an "officer ha[s] a particularized and objective basis to suspect criminal activity."[20] Delaware has codified this standard in 11 *Del. C.* § 1902. This Court has explained that reasonable suspicion is evaluated by the totality of the circumstances "as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[21] We have previously held that a defendant's presence in a high crime area and

---

[18] 35 A.3d 418, 2011 WL 5319900, at *1 (Del. 2011) (TABLE).
[19] *Carello v. State*, __ A.3d __ (Del. 2017) (TABLE).
[20] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1288 (Del. 2008).
[21] *Jones*, 745 A.2d at 861.

8

unprovoked headlong flight are factors that can be considered in the reasonable suspicion analysis.[22]

(19)   When Loat took off running, the police had reasonable suspicion to stop him.  As the Superior Court held, Detective Schupp knew that Loat had access to weapons because he had previously executed a search warrant at Loat's house and found guns.  Although Loat was not the subject of the warrant, this information put Detective Schupp on notice that Loat had access to guns.  Further, when Corporal Moore approached Loat, he took off running through a high crime area.  Finally, as Loat was running, he grabbed as his waistband, leading Corporal Moore to believe he was reaching for a gun.  Thus Corporal Moore had reasonable suspicion to stop him, and the Superior Court did not abuse its discretion by declining to suppress the gun.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[22] *Woody*, 765 A.2d at 1265-66.

9