**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

STATE OF DELAWARE,        )
                                )
        v.                  )        Case No.: 1704019023
                                )
JEFFREY PETERSON,         )
                                )
       Defendant.         )

Submitted: February 7, 2018
Decided: April 16, 2018

Jillian Schroeder, Esquire
Delaware Department of Justice
Carvel State Building, 7th Floor
820 N. French Street
Wilmington, DE 19801
*Attorney for the State of Delaware*

David JJ. Facciolo, Esquire
Minister & Facciolo LLC
521 North West Street
Wilmington, DE 19801
*Attorney for Defendant*

**MEMORANDUM OPINION AND ORDER**
**ON DEFENDANT'S MOTION TO SUPPRESS**

**SMALLS, C.J.**

## FACTUAL AND PROCEDURAL HISTORY

On April 29, 2017, Jeffrey Peterson ("Defendant") was arrested for the offenses of Driving a Vehicle Under the Influence of Alcohol, (DUI), in violation of 21 *Del. C.* §4177; Driving Vehicle at Unreasonable Speed or Imprudent Speed, in violation of 21 *Del. C.* §4168(a); and Operating a Vehicle with Improper Window Tint, in violation of 21 *Del. C.* §4313(c). The facts which gave rise to these proceedings indicate Defendant was driving on Naamans Road when Cpl. Andrew Pietlock ("Pietlock") of the Delaware State Police pulled him over for allegedly speeding. Upon approaching Defendant's vehicle, Pietlock detected a moderate odor of alcohol and instructed Defendant to exit the vehicle in order to conduct field sobriety testing. Subsequently, Pietlock arrested Defendant and charged him with the above offenses.

On October 24, 2017, Defendant filed this Motion to Suppress pursuant to Court of Common Pleas Criminal Rule 12(b), to exclude field sobriety and breath test results. Defendant argues Pietlock should not have administered the one leg stand field sobriety test due to steel strut implants in his leg. Defendant avers the implants caused him to sway during the test and he explained to Pietlock that he was incapable of performing the test properly. Furthermore, Defendant alleges the test was administered on a wet, uphill surface where severe fog was beginning to accumulate.

On February 7, 2018, a hearing was held on Defendant's Motion to Suppress. During the motion hearing, Pietlock testified he witnessed Defendant turn onto Naamans Road, accelerate quickly, and continue traveling at a high rate of speed. Pietlock followed Defendant's vehicle and testified he had to reach a speed limit of eighty (80) miles per hour

1

to catch up to the vehicle. However, the speed recorded on the Motor Vehicle Recorder (MVR) in the police vehicle indicated his vehicle only reached a speed of fifty-two (52) miles per hour, which is just above the fifty (50) mile per hour speed limit for roads in that classification.[1] Pietlock also testified that once he initiated his overhead lights, Defendant took longer than usual to pull over. Upon making contact with the Defendant, Pietlock testified he detected a moderate odor of alcohol emanating from Defendants' breath and there was another person in the passenger side of the vehicle. Defendant stated he consumed a couple beers and some Hennessey earlier that night. Pietlock further testified Defendants eyes appeared glassy and bloodshot. The other passenger was clearly intoxicated and his behavior was erratic as detected by the MVR audio.

Pietlock instructed Defendant to exit his vehicle to perform field sobriety tests. There was a discussion regarding Defendant's ability to perform the field tests. Defendant told Pietlock he had a fracture to his left leg and he was being treated for the injury. Pietlock testified that Defendant advised him he could not perform the walk and turn test but, voluntarily performed the balance test.

Notwithstanding this information, Pietlock administered the tests. He first administered the balance test where he instructed the Defendant to lift his injured leg six (6) inches off the ground for thirty (30) seconds. Pietlock testified that Defendant failed the one leg test by dropping his foot at seventeen (17) seconds and his arms moved away from

---

[1] This difference in speed was not properly explained in testimony thus, there is a question regarding the validity of the stop.

2

his body. Thereafter, Pietlock attempted to administer the walk and turn test. This test was interrupted by the actions of the passenger.

Subsequently, Pietlock administered the finger dexterity test in which he testified Defendant failed by not touching his fingertips. Ultimately, Defendant was given a Portable Breath Test (PBT), which Pietlock testified he failed as well. Based upon these test results, Pietlock opined that Defendant was under the influence of alcohol and placed him into custody. During cross-examination, Defense counsel questioned Pietlock regarding the incline and fog conditions in the area where the field sobriety tests were administered.

The Defense called Lynda Rae Kopishke, ("Kopishke") a Forensic Nurse, to testify on behalf of the Defendant in regards to his medical conditions.[2] As a part of her testimony, Kopishke referred to the medical records of Defendant which included an assessment of his injuries.[3] Kopishke referred to the billing records in order to assess the amount of surgeries he received. The Christiana Care Health Services report indicates the nature and extent of surgeries and types of hardware that were implanted in Defendant's leg. Kopishke testified this report indicates what is to be expected in terms of future disability. Kopishke also referred to the Abbington Jefferson Health document which indicated Defendant was treated for Speech Therapy from August 2004 through October 2005.[4] Furthermore, Kopishke relied on an article from the American Academy of Orthopedic Surgeons to assess

---

[2] Defendant's *Exhibit 1*, Kopishke's resume.
[3] Defendant's *Exhibit 2*.
[4] *Id.*

3

the nature of Defendant's injuries.[5] Kopishke also reviewed the MVR in preparation for her testimony.

A report written by Kopishke opines that due to Defendant's physical challenges, Pietlock inadvertently set Defendant up for a probable failure of the standardized field sobriety tests.[6] The report states on April 29, 2015, Defendant underwent surgery on his left foot to repair his metatarsal bone in which a pin and a screw was internally placed in his foot. Subsequently, Defendant was instructed to use an orthowedge shoe and no weight bearing on his left foot. The anticipated recovery time was six (6) to eight (8) weeks, including physical therapy.

The report further indicates that Defendant still wears a knee brace for support, uses ice for swelling, and takes Ibuprofen for pain. In addition, Defendant continues to experience pain in his left lower leg and was evaluated by an orthopedic surgeon. The medical documents submitted indicate Defendant was suffering from a chronic stress fracture of the tibia and surgery was scheduled for June 3, 2016 to implant an intramedullary nail fixation (rod and screws).[7]

Kopishke testified that Defendant walks with a wider base due to his injuries and has a slight limp in his left leg. Kopishke further testified that anytime a person is subject to non-weight bearing on one leg for almost three (3) years, they will try to compensate on the other leg, causing balance issues. Kopishke testified it would be difficult for Defendant to exit the driver's side of a vehicle because he would want to place weight on his right leg.

---

[5] *Id.*
[6] Defendant's *Exhibit 3.*
[7] *Id.*

4

Kopishke observed on the MVR that when Defendant exited the vehicle and was standing talking to the Officer, he was weight-bearing on his right side. Kopishke stated Defendant continues to have balance issues and when asked to balance on one leg, Defendant will have to place his leg down sooner than someone who did not have leg surgeries or implants.

Furthermore, Kopishke set forth in her report that at the time of Defendant's arrest, he was dealing with multiple medical problems, including speech challenges. Under stress, Defendant would need additional time to formulate words and would seem less articulate. Kopishke testified that this was evident in the MVR, which is reflected in the counting test when Defendant counted slower in order to inhibit stuttering. Kopishke's concluded that Defendant was inadvertently set up for failure when performing field sobriety tests based on his medical issues.

During cross-examination, the State pointed out and questioned Kopishke about the fact that the arrest for DUI was over two (2) years after surgery on Defendants foot, and one (1) year after the rod and screws were placed in his left leg. In addition, Defendant discontinued physical therapy in July of 2016. Moreover, Kopishke's report indicated that by June 15, 2016, Defendant was riding a stationary bike, stopped wearing his knee immobilizer and played basketball at half speed. Kopishke responded by indicating that though Defendant was improving, he still had a pain level of three (3) and would require additional surgeries. Kopishke further testified that after seventeen (17) seconds of the one leg stand test, Defendant was wobbling and raising his arms due to his balance issues. During re-direct, Kopishke testified that Defendant's impairment is most likely permanent.

At the conclusion of the Motion Hearing, the matter was taken under advisement.

5

# LEGAL STANDARD

To justify a vehicle stop, the officer must be able to point to objective facts which would support "reasonable articulable suspicion, taken together with rational inferences from those facts, which reasonably warrant the intrusion."[8] "The Court must examine the totality of circumstances surrounding the situation as viewed through the 'eyes of a reasonable trained police officer in the same manner or similar circumstances, combining the objective facts with such an officer's subjective interpretation to those facts' and determine reasonable articulable suspicion."[9]

On a motion to suppress, the State must establish, by a preponderance of the evidence, that Defendant's arrest was supported by probable cause.[10] To satisfy the probable cause standard for a DUI arrest, the state "must present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a DUI offense."[11] This totality consideration is based on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[12] In reaching its decision, the Court must analyze the facts based upon what the arresting officer knew at the time the decision was made to take the Defendant into custody.

---

[8] *State v. Kane*, No. 1210019022, 2014 WL 12684290, at *4 (Del. Com. Pl. Feb. 12, 2014); *See Woody v. State*, 765 A.2d 1257, 1262-64 (Del. 2000).
[9] *Id.*
[10] *State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Oct. 14, 2010).
[11] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).
[12] *State v. Cardona*, 2008 WL 5206771, at *3 (Del. Super. Dec. 3, 2008) (quoting *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993)).

The factors here include the Defendant was pulled over for allegedly speeding, the officer detected a moderate odor of alcohol emanating from the Defendant's person, he had glassy eyes, and his speech was slurred. Therefore, the officer had sufficient facts to request the Defendant to perform field sobriety tests.

## DISCUSSION

Defendant argues the manner in which the field sobriety tests were administered by Pietlock did not take into consideration the serious physical injuries of Defendant and the road and weather conditions. Defendant also argues the injury to his leg affects his stability to maintain his balance and his history of stuttering inhibits his speech. In addition, the area where the field sobriety tests were performed was on an incline and there was an increasing amount of fog. Therefore, Defendant argues the field sobriety tests must be suppressed; the basis of the stop is questionable because of being only pulled over for speeding; and there was an insufficient basis to administer a PBT.

The State argues Defendant admitted to Pietlock that he had consumed beer and Hennessey earlier that night. In addition, Defendant failed the finger dexterity and PBT test. Furthermore, the State alleges the one leg stand test was properly administered by Pietlock. The State argues standard field sobriety tests are not required for a finding of probable cause under *Lefebvre v. State*.[13] The State alleges that there is more than enough here for probable cause when excluding the one leg stand test. This includes the traffic violation, (Speeding), the moderate odor of alcohol, admission to drinking, bloodshot glassy eyes, the finger dexterity test and failed PBT. The State argues the facts under the totality of the

---

[13] 19 A.3d 287 (Del.Super 2011).

7

circumstances support a basis to find probable cause to place Defendant under arrest for DUI.

In *State v. Ministero*, the Court excluded the field sobriety tests because the officer failed to comply with the National Highway Traffic Safety Administration (NHTSA) guidelines in that, "where there's an indication of some physical disability, that test is not to be performed."[14] In *State v. Degregoriis*, the Court did not consider the results of ... the one-leg stand test because [the officer] had Defendant perform the tests even though he informed her of physical injuries.[15] Furthermore, in *State v. King*, the Defendant informed the officer he suffered from a back injury prior to the officer conducting the field tests, in which the Court disregarded [the one leg stand] test when assessing whether probable cause existed to arrest Mr. King for DUI.[16] Finally, in *State v. Anderson* the Court held, "Given that Mr. Anderson's knee injuries confound the results of the 'walk and turn' and the 'one leg stand' tests, the Court will not consider them in its probable cause analysis."[17]

The NHTSA 2015 Manual states that the one leg stand test is sixty-five percent accurate and requires a reasonably dry, hard, level, and non-slippery surface. In addition, the NHTSA Manual states that recent field validation studies have indicated that varying environmental conditions have not affected a subject's ability to perform this test.

Defendant has undergone two (2) surgeries and has rods and screws placed inside his left leg. During the years of 2013 through 2016, Defendant was unable to place full weight

---

[14] *State v. Ministero*, 2006 WL 3844201, at *4 (Del. Super. Ct. Dec. 21, 2006).
[15] *State v. Degregoriis*, No. 1305007734, 2014 WL 3805799, at *fn. 2 (Del. Com. Pl. Aug. 1, 2014).
[16] *State v. King*, 2007 WL 1153058, at *3 (Del. Super. Ct. Mar. 30, 2007).
[17] *State v. Anderson*, 2010 WL 4056130, at *4 (Del. Super. Ct. Oct. 14, 2010).

bearing on his left leg and suffered a subsequent bone fracture. Due to Defendants left leg injury, he was unable to maintain balance during the one leg stand test. It is clear from the facts that Defendant explained to Pietlock he had a leg injury and may not be able to properly stand on one leg. This is supported by testimony and the MVR[18]. Therefore, the one leg stand field sobriety test is excluded in the probable cause analysis.

The final issue is whether the PBT is sufficient standing alone. The Defendant's observation on the MVR was steady and his speech was clear and concise. When these factors are considered with the other facts, there is no basis to support the officer's decision to administer the PBT, and its results are excluded. In addition, there is no statistical correlation between the finger dexterity test and impairment. The officer's reliance on this test is misplaced.

There is an issue if the Defendant was speeding due to conflicting testimony and the speedometer on the MVR. While the validity of the arrest is clearly an issue, I need not address that issue because of my conclusion that probable cause did not exist for the arrest.

## CONCLUSION

For the reasons discussed above, I find the administration of the one leg stand field test to be unreasonable due to the Defendant's injuries and it is not considered in the analysis of probable cause. There is no weight given to the finger dexterity test and little weight given to the Defendant's stuttering. Under the totality of the circumstances, I find that the officer lacked probable cause to arrest Defendant for DUI.

---

[18] State's *Exhibit 1.*

9

ACCORDINGLY, the Defendant's Motion to Suppress is **GRANTED**. The Clerk shall schedule these matters for trial.

**IT IS SO ORDERED.**

_____
Alex J. Smalls,
Chief Judge