## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 2009008259** |
| v. | ) | |
| | ) | |
| **TAHKAI MAYFIELD,** | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: March 25, 2021
Decided: September 14, 2021

## ORDER ON DEFENDANT'S MOTION TO SUPPRESS

Defendant, Tahkai Mayfield ("Mayfield") has filed a Motion to Suppress to challenge the admissibility of evidence resulting from a traffic stop of a vehicle that he was a passenger in resulting in his arrest. For the reasons that follow, Defendant's Motion to Suppress is DENIED.

On September 10, 2021, the Court held a hearing on the Motion to Suppress at which time Officer Mann ("Mann") testified. His testimony reveals the following facts which the Court finds were proven by the State by a preponderance of the evidence.

On September 19, 2020, around 10:54 am, Mann was on patrol parked on the east side of North Church Street in Wilmington Delaware when he noticed a blue

Nissan pass him at a high rate of speed, causing his vehicle to sway as the car passed. Based on Officer Mann's training and experience, the car was traveling above the posted speed limit of 25 miles per hour. Mann activated his emergency lights to initiate a traffic stop and the suspect vehicle pulled over. Mann approached the driver side of the vehicle and requested the driver's license, registration and proof of insurance. The driver identified herself as Diamond Shaw ("Shaw") and told Mann that she did not have a driver's license. Mann then asked the passenger, Mayfield, the same and he responded that he also did not have a driver's license. Due to the car bearing temporary out of state registration, Mann obtained the VIN from the front of the windshield to confirm the vehicle's status. By this point, Senior Corporal Cain ("Cain") and Patrolmen Cooper ("Cooper") arrived on scene.

Mann then returned to his vehicle where he performed a DELJIS inquiry check for Shaw and Mayfield. As to Shaw, no results were found but as for Mayfield, results showed that Mayfield was on probation and had a history of firearm charges. A DATA inquiry[1] was conducted for the car and Mann was informed that the car was not likely registered. The results of the DATA inquiry took several minutes. At some point Mann was waived down by Shaw and Mayfield regarding the status of the stop. Mayfield told the officers that he had a probation

---

[1] This inquiry took some time as the Wilmington Center DATA Center had to call the appropriate Pennsylvania authorities for them to check about the temporary tag.

meeting at about 11:30 am that he had to attend. Office Cooper returned to Mann's patrol car where he then told Mann that Mayfield appeared nervous, his hands were shaking, and he had labored fast breathing. Again, Mayfield and Shaw looked back at the patrol vehicles.

At this point Mann left his patrol car along with Cooper and they both approached the passenger side of the car. They approached the passenger side of the car primarily to ensure officer safety. Mann wanted to advise the driver of the next step in the traffic stop and attempt to get permission to search the car. Mann attempted to speak to Shaw about the next step in the traffic stop and to get her permission to search the car. Mann was unable to communicate with Shaw as Mayfield continued to interrupt Mann's attempt to speak to Shaw. Because of the interruptions, which hindered Mann's ability to communicate with Shaw, Mayfield was asked to step out of the car, which he did. When Mayfield stepped out of the car, he left the passenger side door open. At this point, while no portion of his own body was within the confines of the car, Mann observed the handle of a firearm underneath the passenger side of the car. The firearm was seized. The defendant has been charged with possession of the Firearm By a Person Prohibited and Carrying a Concealed Deadly Weapon along with a misdemeanor and a violation. It is the seizure of this firearm which forms the basis of the instant motion.

## STANDARD OF REVIEW

On a Motion to Suppress evidence in a *warrantless* search or seizure, "the State bears the burden of proof."[2]

Police officers are permitted to stop a motor vehicle based on a police officer's reasonable suspicion that the operator or occupant of the vehicle has committed or is committing a violation of the law, which includes traffic laws.[3]

A determination of reasonable suspicion is "evaluated in the context of the totality of circumstances to assess whether the detaining officer had a particularized and objective basis to suspect criminal activity."[4] The totality of the circumstances of the surrounding situation is "viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[5] Thus, when determining whether reasonable suspicion exists to justify a detention, the court "defers to the experience and training of law enforcement officers."[6]

---

[2] *Daniel Hunter v. State*, 783 a.2d 558, 560 (Del. 2001).
[3] *Heather Juliano v. State of Delaware*, 2020 WL 6815414 (Del. 2020); *State of Delaware v. William J. Prouse, III*, 382 A.2d 1359, 1361 (Del. 1978), *aff'd* 448 U.S. 647 (1979).
[4] *Jose Lopez-Vazquez v. State of Delaware*, 956 A.2d 1280, 1288 (Del. 2008).
[5] *Id.*, *Uriel C. Harris v. State of Delaware*, 806 A.2d 119, 127 (Del. 2002); *Joseph Jones v. State of Delaware*, 45 A.2d 856, 861 (Del. 1999); *Josiah Woody v. state of Delaware*, 765 A.2d 1257, 1263 (Del. 2001).
[6] *Josiah Woody*, 765 A.2d at 1263 (Del. 2001).

Since the motion challenges an officer's actions in ordering an occupant of a vehicle out of it during a traffic stop, the burden is on the State to show the stop was reasonable by a preponderance of the evidence.[7]

The initial purpose of a traffic stop determines the duration and execution of the stop.[8] Any investigation beyond the initial purpose of the stop "must be supported by independent facts sufficient to justify the additional intrusion."[9] An officer must let a car go after issuing a citation or warning, and running routine computer checks, unless he obtains voluntary consent from the driver or unveils independent facts to justify the encounter.[10] "Whether a given detention is unreasonably attenuated necessarily involves a fact-intensive inquiry in each case."[11]

An officer who initiates a lawful traffic stop may order the occupants of the vehicle out of it and does not constitute a seizure under the Fourth Amendment. [12]

## **ANALYSIS**

Neither party challenges the initial traffic stop. The question before the court is the officers' action in removing Mayfield from the car.

---

[7] *State v. Dillard*, No. 1710003809, at *23 (super. Ct. Mar. 16, 2018) (citing *State v. Abel*, 2011 WL 522126, at *2 (Del. Super. 2011), *aff'd*, 68 A.3d 1228 (Del. 2012), *as amended* (Jan. 22, 2013).

[8] *Caldwell v. State*, 780 A.2d 1037, 1047 (Del. 2001) (citing *Florida v. Royer*, 460 U.S. 491, 498 (1983).

[9] *Caldwell*, 780 A.2d at 1047 (Del. 2001).

[10] *Id.*

[11] *Id.* at 1048.

[12] *Maryland v. Wilson*, 519 U.S. 408 (1997) (extending the holding of *Pennsylvania v. Mimms*, 435 U.S. 106 (1977), that an officer may order the driver out of a vehicle during a lawful traffic stop, to passengers.); *Loper v. State*, 8.3d 1169, 1174 (Del. 2010) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 107-111 (1977).

During the stop, Mann discovered that the car had temporary out of state registration, prompting him to obtain the car's VIN number and perform a DATA inquiry. The DATA inquiry informed Mann that the car was likely not registered. Mann had been advised by Cooper that Mayfield appeared nervous. Mann was also aware that Mayfield was on probation and had a history of firearm related charges. After discovering this information, Mann approached the passenger side of the car. The plan was to ask for permission to search the car and advise Shaw of the next steps in the traffic stop. Mann subsequently asked Mayfield to get out of the car. Mann noted that when Mayfield opened the door to get out of the car he left the front passenger side open. It was at that point that Mann, while completely out of the car, observed the handle of a firearm underneath the passenger side of the car in plain view.

Mayfield points this Court to the decisions in *State v. Caldwell* and *Murray v. State* and argues that any and all evidence should be suppressed because Mann's order that Mayfield get out of the car constituted a second independent investigative and that Mayfield's nervousness, glancing back at the patrol car, and probationary status did not form an independent basis for Mann to prolong the stop.

Like the instant case, *Caldwell* involved a stop of a car where the defendant was subsequently ordered out of the car. The officer initiated the stop based on a parking violation by the defendant. After making the stop, the officer asked the

6

defendant for his credentials and then *immediately* ordered him out of the car, frisking and handcuffing him. The Court recognized that the officer had authority to question the defendant based on the parking violation, but that the authority did not extend to frisking and handcuffing him.[13] The Court concluded that the officer's action were "entirely unrelated" and exceeded the scope of the stop.[14]

Mayfield argues the instant case is like *Caldwell* because Mann approached the passenger side of the car and immediately ordered Mayfield out of it, even though the DATA inquiry showed that *Shaw* was the one who had likely committed numerous traffic violations. The State argues the instant case is not like *Caldwell* because Mann had approached the passenger side various times throughout the stop and did not order Mayfield of the car until he became disruptive of the conversation Mann was trying to have with Shaw about the DATA results, issuing a citation, and obtaining consent to search the car. In other words, the State argues the traffic stop was not yet complete.

This Court finds Mann's suppression hearing testimony very credible and does not find the inconsistencies argued by Mayfield of Mann's prior testimony in his Affidavit of Probable Cause, police report or preliminary hearing testimony to be as inconsistent as argued by the defense. Even if the testimony was inconsistent,

---

[13] *Caldwell*, 780 A.2d at 1049.
[14] *Id.*

the Court accepts Mann's suppression hearing to be more credible. Because Mann was actively attempting to discuss with Shaw the results of the DATA inquiry and about issuing a citation, the purpose of the stop was not completed at the time Mayfield was ordered out of the car.[15]

Mayfield also argues, citing *Caldwell* and *Murray* in support, that his nervousness, glancing back at the patrol car, and probationary status was not enough to justify reasonable suspicion that defendant was involved in criminal activity. It is clear to this Court based on the decisions in *Caldwell* and *Murray* that the behaviors cited by Mayfield are not sufficient to justify reasonable suspicion that he was involved in criminal activity. However, because this Court finds that the stop was not completed at the time Mann ordered Mayfield out of the vehicle, it is not necessary for the State to show additional independent facts to justify Mann's actions because Mann's order did not constitute a second independent investigative detention. Also, the officers had authority to order Mayfield out of the car during the lawful traffic stop, and such an order did not constitute a seizure. Therefore, Mayfield's argument to this point is moot.

When Mayfield was ordered out of the car, he left the passenger side door open. It was then that Mann observed the handle of a firearm underneath the

---

[15] The fact that Mann was also attempting to obtain permission to search the car does not change the fact that the traffic stop was not complete does not trigger additional Fourth Amendment protections.

passenger side of the vehicle in plain view. Under the "plain view" doctrine, "the mere observation of an item in plain view does not constitute a Fourth Amendment search."[16] An officer may, without a warrant, seize the contraband in plain view if "(1) the officer is lawfully in a position to observe the contraband, (2) the item's evidentiary value is immediately apparent, and (3) the officer has a lawful right of access to the item."[17] Mann was lawfully in a position to observe the firearm because the stop of the car was lawful. The firearm's evidentiary value was immediately apparent, especially based on the DELJIS search performed by Mann showing Mayfield's history of firearm related charges. Mann had a lawful right of access to the firearm where he had prior justification for his access to the firearm – the lawful traffic stop. Therefore, the plain view doctrine applies in the instant case.

**WHEREFORE**, for all the reasons stated herein, the Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

/S/ Francis J. Jones, Jr.
Francis J. Jones, Jr., Judge

cc:    Original to Prothonotary
       Alanna Farbert, Esquire
       Anthony Hill, Deputy Attorney General
       Investigative Services

---

[16] *Hardin v. State*, 844 A.2d 982, 985 (Del. 2004) (citing *Williamson v. State*, 707 A.2d 350, 258 (Del. 1998)).
[17] *Id.* (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993); *Williamson*, 707 A.2d at 358.