# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ID No. 2204003966** |
| **JAMES MCDOUGAL,** | ) | |
| **Defendant.** | ) | |

Submitted: February 10, 2023
Decided: March 7, 2023

## Memorandum Opinion & Order

*Upon Defendant's Motion to Suppress* – **DENIED.**

This 7th day of March, 2023, having considered Defendant's Motion to Suppress, the State's Response and the record in this matter; it appears to the Court that:

1.  Defendant James McDougal (hereinafter "Defendant") was arrested on April 8, 2022, and ultimately indicted on May 9, 2022, for the charges of Possession of a Firearm by a Person Prohibited,[1] Possession of Ammunition by a Person Prohibited[2] and Carrying a Concealed Deadly Weapon.[3]

---

[1]     11 *Del. C*. § 1448.
[2]     *Id.*.
[3]     11 *Del. C*. § 1442. *See also* Indictment, *State v. James McDougal*, ID No. 2204003966, D.I. 15.

2. Defendant filed the instant motion on December 12, 2022, seeking to suppress the evidence obtained following his detention.[4] The State responded in opposition on January 21, 2023.[5] The motion was heard on February 12, 2023.[6] Judgment was reserved.

3. Defendant's motion challenges the basis for his initial detention with police under *Terry v. Ohio*, arguing that the officers did not possess the required reasonable, articulable suspicion of criminal activity under both the Delaware and United States Constitutions.[7]

4. The relevant facts and record were developed from the filed motions and at the motion hearing. Officers Leonard Moses and Shauntae Hunt of the Wilmington Police Department (hereinafter "WPD") testified. In addition, Body Worn Camera (hereinafter "BWC") of Officers Rosaio and Hunt were played as State's Exhibits.[8] As a result of this record, it was revealed that in late March, 2022, a Confidential Informant (hereinafter "CI") told WPD that four (4) individuals were involved with street-level drug dealing at the area of 24th and Carter Streets in Wilmington. The CI additionally told police that these individuals were known to carry firearms either on their person or would use a ground stash, due to a high police

---

[4] D.I. 8.
[5] D.I. 13.
[6] D.I. 12.
[7] *See* Defendant's Motion to Suppress, D.I. 8.
[8] D.I. 8, 12, 13.

presence in the area.[9]  This CI was not past proven reliable, however following the initial tip, WPD identified the four individuals the CI referenced by nickname as Jamir Coleman, Rashad Acklin, Demy Lee and Dashawn Smith.  The CI did not identify Defendant.  Through their research, WPD learned that prior to the CI tip, two of the named individuals (Demy Lee and Dashawn Smith) had been located with weapons in the area of 24th and Carter Streets.

5.     On the date of Defendant's arrest, WPD officers were on proactive patrol in the area of 24th and Carter Streets when they observed Defendant and two others, Jamir Coleman and Rashad Acklin, standing idle at the intersection of 24th and Carter Streets on the sidewalk.  These individuals were blocking the flow of traffic on the sidewalk.  Because of his prior research into the CI tip, Officer Moses was aware that the people with Defendant – Coleman and Acklin – did not live in the area.  Officer Moses and the other WPD officers on scene were unfamiliar with Defendant at the time of their initial observation.  The officers then parked and exited their patrol vehicle, with Officer Hunt approaching Jamir Coleman and Officer Moses approaching Defendant.  Another, unidentified officer approached Acklin.

---

[9]     Officer Moses defined a ground stash as an area close to where a drug dealer will stand in which a firearm and/or drugs can be concealed.  This area can be behind a trash can, under wheels, broken stoop or any other area where contraband can be concealed, yet easily accessible.  D.I.  12.

6.     Upon approaching Defendant, Officer Moses immediately noticed Defendant was dressed in baggy clothes with multiple layers, a characteristic of an armed individual, according to his training. Officer Moses noted it was unseasonable attire for the weather and that it appeared Defendant was wearing multiple pairs of pants. According to Officer Moses, armed individuals will wear multiple layers of clothing to prevent a firearm they are carrying from "printing". Printing is when the firearm is visible from outside of the clothing. Multiple layers additionally helps secure an unholstered firearm from moving around. Moses contacted Defendant, explained to him his concerns about loitering in the area and asked Defendant if he was armed. Defendant replied that he was not and was asked if he would consent to a pat down. Defendant said he would not. Officer Moses then asked Defendant for his name and explained that the purpose was to identify him, so that he could be given his warning and "be sent on his way." Defendant refused to give Officer Moses his name. At that time, Moses instructed Defendant sit down on a nearby stoop out of concerns for officer safety, while he attempted to learn his identity.

7.     As Defendant was taken to the stoop, both Coleman and Aklin were given a warning to move on pursuant to 11 *Del. C.* § 1321. Both individuals had given their names to the officers and moved along accordingly. Upon being placed on the stoop, Officer Moses observed a "unusual" bulge in Defendant's waistband.

Defendant was asked about the bulge and in response pulled out a medical facemask and a hair cap. The bulge was still present, so Officer Moses conducted a pat down of Defendant. During the pat down, a loaded pink and black 9mm firearm was located in his clothes at his waistband. Defendant was subsequently arrested and identified and charged with the instant offenses.

8.    The Fourth Amendment of the United States Constitution and Art. I, § 6 of the Delaware Constitution prohibits unreasonable searches and seizures by the State. A seizure occurs under the Delaware constitution "when a reasonable person would have believed he or she was not free to ignore the police presence."[10] The police may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot."[11] An officer has reasonable suspicion to stop a person for investigative purposes if the detaining officer is able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."[12] Reasonable, articulable suspicion is a less demanding standard than probable cause and requires "a showing considerably less than a preponderance of the evidence."[13] In determining whether an officer had reasonable, articulable

---

[10]    *Jones v. State*, 745 A.2d at 869.
[11]    *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. at 7).
[12]    *Coleman v. State*, 562 A.2d 1171, 1174 (Del. 1989) (quoting *Terry v. Ohio*, 392 U.S. 1 (1968).)
[13]    *Woody v. State*, 765 A.2d 1257, 1263 (Del. 2001)

suspicion, the Court may look to the totality of the circumstances and determine whether a reasonable officer and considers the facts using an objective standard.[14] The State bears the burden of proving, by a preponderance of the evidence, that the stop comported with both the Delaware and Federal Constitution.[15]

9. Here, the State concedes that a detention occurred when Defendant was instructed to sit down on the stoop, therefore, the analysis is limited to Officer Moses' observations prior to that point and whether the initial questioning of Defendant constituted a seizure. Defendant argues the detention occurred when Officer Moses approached Defendant which required reasonable, articulable suspicion at that point in time. There is no body cam video of the initial approach to Defendant, as the recording begins once Defendant is already seated on the stoop.

10. The State purports, through the testimony of both Officers Moses and Hunt, that the officers, after having observed the three men loitering, were attempting to give Defendant the requisite loitering warning and have him move on, as they did with Coleman and Acklin.

11. A stop does not occur upon any encounter between a citizen and the police. Police may ask questions of or approach a citizen without it being considered

---

[14] *Jones v. State*, 28 A.3d 1046 (Del. 2011), *see also Lopez-Vazquez v. State*, 956 A.2d 1280 (Del. 2008),

[15] *Hunter v. State*, 783 A2d. 558, 560 (Del. 2001).

a detention.[16]  This is what initially occurred here.  Delaware law does not prohibit an officer from approaching a citizen and asking questions and police officers "are permitted to initiate contact with citizens on the street for the purpose of asking questions."[17]  Therefore, when the officers initially approached the group and simply asked for their names, it cannot reasonably be said that the individuals did not feel free to ignore the police presence.  This is further supported by the fact that the officers did not further question or ultimately detain Coleman and Acklin.

12.    However, at the point that Defendant was told that if he gave his name, he would be allowed to move along, a reasonable person in Defendant's shoes would not have free to ignore the police presence, due to the officer's own words.[18]

13.    That being so, 11 *Del C.* § 1321 is important here.  This section requires an officer to give a warning prior to any arrest for a loitering violation, "[u]nless flight by the accused or other circumstances make it impracticable."  Officer Moses testified that it is his practice, consistent with the statute, to identify the person by name when giving a warning to ensure that, if a citation is given in the future, it was to the correct person.  Officer Moses testified that this was his intention when approaching Defendant.   This is consistent with the evidence that the other two

---

[16]    *Woody v. State*, 765 A.2d 1257, 1263-64.
[17]    *Brown v. State*, 35 A.3d 418, 2011 WL 5319900, at *2 (Del. Oct. 31, 2011) (TABLE) (quoting *Jones*, 28 A.3d at 1051).
[18]    *See Williams v. State*, 962 A.2d 210, 215-216 (Del. 2008).

individuals were similarly approached and released with their warning once their names were provided. It was only upon Defendant's refusal, coupled with the observation of his clothing and a concern for officer safety, did Officer Moses require Defendant to sit on the nearby stoop.

14. Because Moses was investigating a potential violation of the loitering statute, 11 *Del. C.* § 1902, allows further detention if Moses possessed a "reasonable ground to suspect" Defendant was "committing, has committed or is about to commit" that crime.[19] In viewing the totality of the circumstances, Officer Moses' ability to articulate that the three men were impeding the flow of pedestrian traffic, two of the three individuals did not live in the area and had no known lawful purpose to be there, the background information provided by the CI that street level drug sales were occurring at that location,[20] as well as the observations of Defendant's baggy, layered clothes in which it appeared he was wearing two sets of pants, a "reasonable trained police officer in the same or similar circumstances" would be justified in suspecting criminal activity. Thus, he possessed reasonable, articulable suspicion at that point to detain Defendant.

---

[19]   11 *Del. C.* § 1902(a).
[20]   In this analysis, appropriate weight is being given to the credibility of the CI information. While not challenged in Defendant's motion specifically, it is not lost on the Court that the CI was not past proven, and relayed information that potentially could have been revealed through public arrest records.

15.     Accordingly, no violation under either Article I, § 6 of the Delaware Constitution, or the Fourth Amendment of the United States Constitution occurred when the officers approached, and eventually detained Defendant.  Further, under *Terry v. Ohio* and its Delaware progeny, once reasonable, articulable suspicion is had for the initial detention, Officer Moses appropriately engaged in the pat down of Defendant once on the stoop, no further analysis is required.[21]

**IT IS HEREBY ORDERED,** that Defendant's Motion to Suppress is **DENIED**.

_____
Danielle J. Brennan, Judge

Original to Prothonotary

Cc:   Karin Volker, Esquire, Deputy Attorney General
      James Turner, Esquire, Office of Defense Service

---

[21]     *Jones v. State*, 745 A.2d 856 (Del. 1999).